IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALLEN L. FEINGOLD, et al.      :      CIVIL ACTION
                        :
       v.                :
                        :
LIBERTY MUTUAL GROUP, et al.   :      NO. 11-5364

MEMORANDUM

Bartle, J.                              February 28, 2012

       Pro se plaintiffs Allen L. Feingold ("Feingold") and
Barbara Quinn as Executrix of the Estate of Theresa Thompson
("Thompson") bring this diversity action for punitive and other
damages against Liberty Mutual Group, Liberty Mutual Insurance
Company, Liberty Guard Auto Company, and Liberty Mutual Fire
Insurance Company (collectively "Liberty Mutual") for violation
of Pennsylvania's bad faith insurance statute, 42 Pa. Cons. Stat.
Ann. § 8371.  Before the court is the motion of defendants to
dismiss the complaint with respect to plaintiff Feingold for lack
of standing under Rule 12(b)(1) of the Federal Rules of Civil
Procedure.[1]

---

1.  Defendants incorrectly titled their motion as a motion to
dismiss for failure to state a claim for relief under Rule
12(b)(6).  Issues of standing go to the court's subject matter
jurisdiction and are properly considered a defense under Rule
12(b)(1).  See, e.g., Ballentine v. United States, 486 F.3d 806,
810 (3d Cir. 2007).  Such a motion may be made at any time.

I.

Defendants raise a facial challenge to Feingold's standing and thus to this court's subject matter jurisdiction over his claim.  A facial challenge is one in which a defendant argues that "the allegations on the face of the complaint, taken as true," are insufficient to invoke the court's jurisdiction. Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 (3d Cir. 2002).  When reviewing a facial challenge to subject matter jurisdiction, the court accepts the plaintiff's allegations as correct and draws inferences in the plaintiff's favor. Turicentro, 303 F.3d at 300 & n.4; Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  The court may consider the allegations set forth in the complaint as well as "public records" and "undisputedly authentic documents." Pension Benefit Guar. Corp. v. White, 998 F.2d 1192, 1196-97 (3d Cir. 1993); see also Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

II.

This action arises out of a claim made by Thompson in an underlying lawsuit for uninsured motorist ("UM") benefits under her policy with Liberty Mutual after suffering injuries in a motor vehicle accident in 1997.  Thompson, with Feingold as her attorney, sued Liberty Mutual in the Court of Common Pleas of Philadelphia County after Liberty Mutual refused to pay the UM benefits.  She then filed a motion to compel arbitration which the court granted.  In 2003, the arbitration panel awarded

Thompson $90,000.  Liberty Mutual, however, rejected the award and refused to make payment.

Thereafter, Thompson died.  Quinn was appointed as Executrix of Thompson's estate.  Also during this time, Feingold was disbarred by the Pennsylvania Supreme Court.  He was later enjoined from entering his office or filing court documents without court approval after he persisted in the unauthorized practice law.  A conservator was appointed to oversee his office and files.  See Feingold v. Office of Disciplinary Counsel, 415 F. App'x 429, 430 (3d Cir. 2011).

On June 3, 2011, Quinn petitioned the Court of Common Pleas for confirmation of the arbitration award.  The court granted the petition and entered judgment in Quinn's favor in the amount of $90,000 plus interest.  Liberty Mutual then appealed the order confirming the award to the Superior Court of Pennsylvania.  In response, Quinn filed a motion to quash the appeal.

On August 25, 2011, while that appeal was still pending, plaintiffs instituted the present action in this court. According to the complaint, the defendants' handling of Thompson's claim for uninsured motorist benefits and their ongoing refusal to pay the arbitration award constitute bad faith.  Feingold asserts that he has been deprived of counsel fees and costs that would be due to him under a contingent fee agreement.

The Pennsylvania Superior Court granted Quinn's motion to quash the appeal in the underlying action on November 15, 2011.  Thereafter, Liberty Mutual paid Quinn $134,744.38 in full satisfaction of the judgment and interest due.

III.

Liberty Mutual asserts that Feingold lacks standing to pursue a claim under Pennsylvania's bad faith insurance statute. 42 Pa. Cons. Stat. Ann. § 8371.  Feingold maintains that he has standing to do so by virtue of an assignment in his favor which was executed by Feingold and Quinn.  It states:

> TO COMPENSATE AND REPAY ALLEN FEINGOLD FOR
> ALL OF THE WORK, REPRTESENTATION [SIC],
> EXPENSES AND COSTS THAT HE PERFORMED AND
> ADVANCED OR PAID FOR THE DECEASED, THERESA
> THOMPSON, ON NUMEROUS OTHER MATTERS, OTHER
> THAN ANY CLAIMS AGAINST THE LIBERTY MUTUAL
> DEFENDANTS, WE ARE ASSIGNING, CONTRACTING AND
> TRANSFERRING TO ALLEN FEINGOLD, FORTY (40%)
> PER CENT OF OUR CLAIMS FOR BAD FAITH AND
> BREACH OF CONTRACT AGAINST THE LIBERTY MUTUAL
> DEFENDANTS WITH CIVIL ACTION NO; 11-5364, IN
> THE UNITED STATES DISTRICT COURT FOR THE
> EASTERN DISTRICT OF PENNSYLVANIA.

This assignment is dated August 17, 2011.[2]  Feingold as a result asserts a 40% interest in the claim pending here against Liberty

---

2.  At a status conference with the court, Feingold conceded that the assignment could not have been executed on that date because it references the civil action number of this litigation, which had not yet been filed as of August 17, 2011.  According to Feingold, plaintiffs originally executed the assignment without the civil action number and later created another assignment with this information which they backdated.  Needless to say, this is a highly questionable practice.

Mutual for bad faith conduct toward Thompson.[3]  We must first

determine whether the claim in issue may be assigned.

> The bad faith statute provides:
>
> In an action arising under an insurance
> policy, if the court finds that the insurer
> has acted in bad faith toward the insured,
> the court may take all of the following
> actions:
>
> (1) Award interest on the amount of the claim
> from the date the claim was made by the
> insured in an amount equal to the prime rate
> of interest plus 3%.
>
> (2) Award punitive damages against the
> insurer.
>
> (3) Assess court costs and attorney fees
> against the insurer.

42 Pa. Cons. Stat. Ann. § 8371 (emphasis added).  In 2007, the

Supreme Court of Pennsylvania held that § 8371, which was enacted

in 1990, "is distinct from the common law cause of action for

breach of the contractual duty of good faith."  Ash v.

Continental Ins. Co., 932 A.2d 877, 884 (Pa. 2007).  The court

ruled that § 8371, which was enacted to deter bad faith conduct

by insurance companies, provides an insured a cause of action in

tort, not contract.  Id. at 885.  As the court explained, "the

duty under § 8371 is one imposed by law as a matter of social

policy, rather than one imposed by mutual consensus, and an

---

3.  Although the assignment is not referenced in the complaint
and was instead provided as an exhibit to Feingold's surreply in
opposition to the motion to dismiss, defendants do not object to
our consideration of this document in deciding the pending
motion.

Case 2:11-cv-05364-HB   Document 26   Filed 02/28/12   Page 6 of 12

action to recover damages for a breach of that duty derives primarily from the law of torts."  Id.

A number of decisions of the Pennsylvania Supreme Court have enunciated a broad rule that unliquidated tort claims cannot be assigned.  In Marsh v. Western New York and Pennsylvania Railway Co., for example, the widow of a brakeman employed by the defendant railroad who was killed on the job assigned to her daughter her claim to recover damages for her husband's death. 53 A. 1001, 1001-02 (Pa. 1903).  The daughter obtained a judgment which was reversed on appeal.  Id.  The court reasoned, "[t]he claim is, at most, one for unliquidated damages, in an action sounding in tort, and is therefore, under the authorities, not capable of assignment before verdict."  Id. at 1002.

A few years later in Sensenig v. Pennsylvania Railroad Co., the court stated:

> Our conclusion in the present case is, that
> whether the action be regarded as for a
> statutory penalty, where the right to recover
> is given 'to the party injured,' or whether
> it be regarded as an action sounding in tort,
> for the recovery of unliquidated damages, in
> either case the enforcement of the right is a
> personal privilege of the party aggrieved,
> and is not, therefore, capable of assignment.

78 A. 91, 92 (Pa. 1910).  In that case the plaintiff sought to recover damages under a Pennsylvania statute against the defendant railroad for discrimination his assignor father had suffered in freight charges for the shipment of cattle.  Id. at 91.  The court held that the assignment was void.  Id. at 92.

-6-

More recently, in <u>Tugboat Indian Co. v. A/S Ivarans Rederi</u>, the Commonwealth's Supreme Court reiterated, "unliquidated damages in tort cannot be assigned."  5 A.2d 153, 155 (Pa. 1939).

Two earlier cases are also of note.  <u>Sommer v. Wilt</u>, 4 Serg. & Rawle 19 (1818), held that a claim for malicious prosecution is a non-assignable personal tort and <u>O'Donnel v. Seybert</u>, 13 Serg. & Rawle 54 (1825), that a claim for excessive distress with respect to unpaid rent may not be assigned.

The public policy against assignment of these types of actions has been explained as a desire to avoiding champerty, that is, speculation or profiteering in litigation by individuals who otherwise have no interest in the subject matter of the underlying claim.  <u>See, e.g.</u>, <u>Chiropractic Nutritional Assocs., Inc. v. Empire Blue Cross & Blue Shield</u>, 669 A.2d 975, 983 (Pa. Super. 1995).

Despite the expansive pronouncements in cases such as <u>Marsh</u>, <u>Sensenig</u>, and <u>Tugboat Indian</u>, the court has explained that certain types of tort actions involving damage to goods or property may be assigned.  In <u>North v. Turner</u>, a plaintiff transferred to his co-plaintiffs his interest in a suit for trespass to property for the taking away of barrels of turpentine, tar, and rosin.  9 Serg. & Rawle 244 (1823).  The justices concluded that the assignment was valid:

> There are, undoubtedly, some injuries which
> so peculiarly adhere to the person of him who
> has suffered them, as to preclude an

assignment of his claim to compensation for
them, so as to make him a witness; such, for
instance, as slander, assault and battery,
criminal conversation with the party's
wife....  But this does not hold with respect
to a trespass committed against a party's
goods, the remedy for which survives to the
personal representative ...; which clearly
shows that such a cause of action is
separable from the person of the owner, and
it cannot be doubted, that it would pass by a
commission of bankruptcy; for, before actual
recovery of damages for the trespass, the
property in the goods themselves, remains in
the original owner or those who represent
him.

The Pennsylvania Supreme Court has also permitted the

assignment of a legal malpractice claim, which it described as

arising out of both negligence and breach of contract and as

"more akin to property rights which can be assigned prior to

liquidation."  Hedlund Mfg. Co., Inc. v. Weiser, Stapler &

Spivak, 539 A.2d 357, 359 (Pa. 1988).  Nonetheless, it cautioned

that "we do not permit the assignment of a cause of action to

recover for personal injuries."  Id.

Significantly, the court has declared that causes of

action in the nature of a penalty are not assignable.  As noted

above, it wrote in Sensenig that an action "regarded as for a

statutory penalty" cannot be assigned because it is "a personal

privilege of the party aggrieved."  78 A. at 92.  This language

is consistent with its much earlier ruling in Osborn v. First

National Bank of Athens, an action to recover penalties for

charging a usurious interest rate.  34 A. 858 (Pa. 1896).  There,

the court held that the claim was one for a statutory penalty and

could not be assigned, for the enforcement of it "is a personal privilege or right of the party aggrieved." Id. at 858.

The right of an insured to recover from an insurer for bad faith conduct under § 8371 is a statutory cause of action sounding in tort in the nature of a penalty. The gravamen of § 8371 is the right of the insured to obtain punitive damages. Ash, 932 A.2d at 885. The Pennsylvania Supreme Court has explained that punitive damages "are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005). "The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct." Id. Based on precedents such as Osborn and Senseniq, the partial assignment by Quinn to Feingold of her bad faith claim under § 8371 is void.

We acknowledge that several decisions of the Pennsylvania Superior Court, an intermediate appellate tribunal, have allowed the assignment of statutory bad faith claims. See, e.g., Brown v. Candelora, 708 A.2d 104, 110 (Pa. Super. 1998); Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602 (Pa. Super. 1997); Stidham v. Millvale Sportsmen's Club, 618 A.2d 945 (Pa. Super. 1992). All do so in passing without any analysis. All were handed down before the Pennsylvania Supreme Court's 2007 decision in Ash, holding that § 8371 creates a statutory tort

action and not an action in contract.[4]  932 A.2d at 885.  None of

these Superior Court cases discusses or even cites Osborn or

Senseniq.  We will not take into account intermediate appellate

court decisions where the highest court of the state has spoken

to the contrary on the subject at hand.  Comm'r v. Estate of

Bosch, 387 U.S. 456, 465 (1967); Sheridan v. NGK Metals Corp.,

609 F.3d 239, 253-54 (3d Cir. 2010).  As a federal court sitting

in a diversity action involving Pennsylvania law, we must follow

the applicable precedents, regardless of age, of the Supreme

Court of Pennsylvania.  See Erie R.R. Co. v. Thompkins, 304 U.S.

64, 78-79 (1938).

Egger v. Gulf Insurance Co., on which Feingold relies,

is inapposite.  903 A.2d 1219 (Pa. 2006).  There, the issue on

appeal was "[w]hether an assignee has standing to sue an insurer

where an insured's assignment of its interests in an insurance

policy is made to the assignee in violation of a policy

restriction requiring the insurer's consent."  Id. at 1222.

While the trial court had also entered judgment after a bench

trial in favor of the insurance company on a bad faith claim

under § 8371, that ruling was not raised on appeal.  Id. at 1237-

38.  The Supreme Court simply had before it the question whether

the assignment of contractual rights under the insurance policy

---

4.  It is well established that causes of action in contract are
generally assignable.  See Restatement (Second) of Contracts
§§ 317-322.

was permissible.  It did not address assignment of the bad faith

tort claim under § 8371.

Absent validity of the assignment, Feingold lacks

standing to pursue this action.  In order to have standing under

Article III of the United States Constitution, a plaintiff must

establish:

> (1) an injury in fact (i.e., a "concrete and
> particularized" invasion of a "legally
> protected interest"); (2) causation (i.e., a
> "fairly traceable" connection between the
> alleged injury in fact and the alleged
> conduct of the defendant); and (3)
> redressability (i.e., it is "likely" and not
> "merely speculative" that the plaintiff's
> injury will be remedied by the relief
> plaintiff seeks in bringing suit).

Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 258 (3d Cir.

2009) (quoting Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S.

269, 273 (2008)).  Feingold is not an insured under the bad faith

statute.  See Klinger v. State Farm Mut. Auto. Ins. Co., 895 F.

Supp. 709, 715-16 (M.D. Pa. 1995).  As the Supreme Court of

Pennsylvania stated in Ash, § 8371 "only permits a narrow class

of plaintiffs to pursue the bad faith claim against a narrow

class of defendants."  932 A.2d at 882.  A disbarred attorney

cannot rely on a contingent fee agreement to pursue on his own

behalf an unliquidated tort claim of a former client under

§ 8371.  Feingold simply has not alleged an injury which is

redressable under Article III.  See Common Cause of Pa., 558 F.3d

at 258.

Accordingly, the motion of defendants to dismiss the complaint with respect to plaintiff Allen L. Feingold for lack of standing will be granted.  The action will continue as to plaintiff Barbara Quinn.